**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**DENVER DIVISION**

| | | |
|---|---|---|
| **RYAN MCKENNA AND ALAYNA MCKENNA** | § § § | **CIVIL ACTION NO:** |
| *Plaintiffs* | § § § | |
| **v.** | § § § | |
| **HEARTLAND RECREATIONAL VEHICLES, LLC AND CAMPING WORLD RV SALES, LLC** | § § § § § | |
| *Defendants* | § | **JURY TRIAL REQUESTED** |

**COMPLAINT**

### I. Parties

1. Plaintiffs, RYAN MCKENNA AND ALAYNA MCKENNA, are individuals that are now and have been at all times a citizens of the state of Colorado.

2. Defendant, HEARTLAND RECREATIONAL VEHICLES, LLC, hereinafter "HEARTLAND," is an Indiana limited liability company with its principal place of business in Indiana and is a citizen of the State of Indiana. HEARTLAND and is a warrantor of a vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

HEARTLAND's agent for service of process is C T Corporation System, 334 North Senate Avenue, Indianapolis, Indiana 46204.

3. Defendant, CAMPING WORLD RV SALES, LLC, hereinafter "CAMPING WORLD," is a Minnesota limited liability company and a citizen of the State of Minnesota.

CAMPING WORLD is wholly owned by FreedomRoads Operations Company, LLC. FreedomRoads Operations Company, LLC is a Minnesota limited liability company and a citizen

of the State of Minnesota and is wholly owned by FreedomRoads, LLC. FreedomRoads, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by FreedomRoads Intermediate Holdco, LLC. FreedomRoads Intermediate Holdco, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by ITM Holding Company #2, LLC. ITM Holding Company #2, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by ITM Holding Company, LLC. ITM Holding Company, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by FreedomRoads Holding Company, LLC. FreedomRoads Holding Company, LLC is a Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned by CWGS Group, LLC.

CWGS Group, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by CWGS Enterprises, LLC. CWGS Enterprises, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is owned by: (a) CWGS Holding, LLC; (b) CVRV Acquisition, LLC; © CWH BR, LLC; (d) Camping World Holdings, Inc.; (e) and certain individuals, none of which are known citizens of the State of Texas by the Plaintiff. CWGS Holding, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by ML Acquisition Company, LLC. ML Acquisition Company, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by : (I) AGI Holding Corp.; and (ii) ML RV Group, LLC. AGI Holding Corp. is a Delaware limited liability company and a citizen of the State of Delaware and is not a publicly held corporation and no publicly held corporation owns 10 percent or more of its stock.

ML RV Group, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by (1) Marcus Lemon who is a citizen of the State of Illinois; (2)

CVRV Acquisition is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by Crestview Partners II GP, LP.  Crestview Partners II GP, LP is a Delaware limited liability partnership and a citizen of the State of Delaware. The identities of the limited partners of Crestview Partners II, LP are confidential; however, none of the limited partners are known citizens of the State of Texas by the Plaintiff;  (3) CWH BR, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by Camping World Holdings, Inc.  Camping World Holdings, Inc. is a publicly traded Delaware corporation with its principal place of business in Lincolnshire, Illinois.  All publicly held companies, if any, that own ten percent (10%) or more of the named party's stock: Camping World RV Sales, LLC is not a publicly held corporation; and (4) Camping World Holdings, Inc. is a Delaware publicly traded corporation, and owns greater than 10 percent of the membership interest in CWGS Enterprises, LLC, which is an indirect parent company of Camping World RV Sales, LLC.

CAMPING WORLD is authorized to do and doing business in the State of Texas whose agent for service of process is CT Corporation System, 334 North Senate Avenue, Indianapolis, Indiana 46204.

## II.   Jurisdiction

4. This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs and the Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

This court also has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiffs's state law claims because said claims are so related to the claims within the Court's original

jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III. Venue

5.  Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

### IV. Conditions Precedent

6.  All conditions precedents have been performed or have occurred.

### V. Facts

#### A. The Transaction

7.  On or about July 28, 2022, Plaintiffs purchased a new 2022 HEARTLAND PROWLER 256RL bearing VIN: 5SFPB3026NE490169, hereinafter "PROWLER," from CAMPING WORLD RV SUPERCENTER.

The PROWLER was purchased primarily for Plaintiffs' personal use. The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

8.  The sales price of the PROWLER was $40,717.21, excluding finance charges. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See *Hughes v. Segal Enterprises, Inc.*, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, **2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

#### B. Implied Warranties

9.  As a result of the sale of the PROWLER by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the

PROWLER would pass without objection in the trade under the contract description; and that the PROWLER was fit for the ordinary purpose for which such PROWLER are purchased.

10. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

11. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the PROWLER occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the PROWLER had, in fact, repaired the defects.

12. Plaintiffs' purchase of the PROWLER was accompanied by express warranties offered by the Defendants, HEARTLAND RECREATIONAL VEHICLES LLC, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the PROWLER.

13. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the HEARTLAND RECREATIONAL VEHICLES LLC's warranty booklet and owners manual.

### D. Actionable Conduct

14. In fact, when delivered, the PROWLER was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to, the following statement in the Plaintiffs' own

words:

> " A. **SLIDE DEFECTS, NON-CONFORMITIES AND CONDITIONS;**
>
> B. **SUB CEILING COLLAPSING IN THE SLIDE;**
>
> C. **CABINET LAMINATE DEFECTS, NON-CONFORMITIES AND CONDITIONS;**
>
> D. **REFRIGERATOR DEFECTS, NON-CONFORMITIES AND CONDITIONS;**
>
> E. **ANY AND ALL DEFECTS, NON-CONFORMITIES AND CONDITIONS LISTED IN ANY REPAIR ORDER**"
>
> F. **TOTAL OUT-OF-SERVICE DAYS - OVER 365.**"

15. Since purchase, Plaintiffs have returned their PROWLER to the Defendants and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendants were given the opportunity to repair the PROWLER the more significant and dangerous conditions were not repaired. Defendants failed to repair the PROWLER so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the PROWLER continues to this day to exhibit some or all of the non-conformities described herein.

16. The defects experienced by Plaintiffs with the PROWLER substantially impaired its use, value and safety.

17. Plaintiffs directly notified the Defendants of the defective conditions of the PROWLER. Plaintiffs notified the Defendants that they wanted a rescission of the sale of PROWLER but the Defendants have failed and refused to buy back Plaintiffs' defective PROWLER.

## VI.  Causes of Action

**COUNT 1:    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

18. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each

and every allegation contained in the preceding paragraphs.

19. Plaintiffs are a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

20. Defendants are a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

21. The PROWLER is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

22. The express warranties more fully described hereinabove pertaining to the PROWLER is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

23. The actions of Defendants in failing to tender the PROWLER to Plaintiffs free of defects and refusing to repair or replace the PROWLER tendered to Plaintiffs constitute a breach of the written and implied warranties covering the PROWLER and hence a violation of the Magnuson-Moss Warranty Act.

24. Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

25. As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth hereinabove, Plaintiffs have been damaged hereinabove in an amount in excess of $200,000.00 according to proof at trial.

26. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged

herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

### COUNT 2: BREACH OF EXPRESS WARRANTIES

27. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendants aresued an expressed written warranty which covered PROWLER, and warranted that the T

28. The Defendants's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiff's PROWLER was free of defects in materials and work quality at the time of delivery.

29. As alleged above, the Defendants breached its warranties by offering for sale, and selling as safe to Plaintiffs a PROWLER that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

30. In breach of the foregoing warranties, the Defendants have failed to correct said defects.

31. The damages Plaintiffs have suffered are a direct and proximate result of Defendants's actions in this matter include, but are not limited to, diminution in value of the PROWLER; costs of repairs; expenses associated with returning the PROWLER for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 3: BREACH OF IMPLIED WARRANTIES

32. Plaintiffs re-allege and incorporate herein by reference each and every allegation set

forth in the preceding paragraphs.

33. The Defendants impliedly warranted that Plaintiffs' PROWLER which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

34. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants are unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the PROWLER had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

35. Because of the defects, Plaintiffs' PROWLER is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendants breached the implied warranty of merchantability.

36. The damages Plaintiffs have suffered are a direct and proximate result of Defendants's actions in this matter include, but are not limited to, diminution in value of the PROWLER; costs of repairs; expenses associated with returning the PROWLER for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**VII.   Economic and Actual Damages**

37. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a.. Out of pocket expenses, including but not limited to the money paid towards the note securing the PROWLER;

    b. Loss of use;

    c. Loss of the "benefit of the bargain";

    d.    Diminished or reduced market value; and

    e.    Costs of repairs.

## XI.  Attorney Fees and Costs

38.  Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XII.  Prayer

39.  For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

    a.    For general, special and actual damages according to proof at trial;

    b.    Rescinding the sale of the 2022 HEARTLAND PROWLER 256RL bearing VIN: 5SFPB3026NE490169 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.    For incidental and consequential damages according to proof at trial;

    d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

    e.    Any diminution in value of the PROWLER attributable to the defects;

    f.    Past and future economic losses;

    g.    Prejudgment and post-judgment interest;

    h.    Damages for loss of use of PROWLER;

    I.    Civil Penalties and/or Punitive damages;

j. Damages for mental anguish;

k. Attorney fees;

l. Costs of suit, expert fees and litigation expenses; and

m All other relief this Honorable Court deems appropriate.

### XIII. Demand for Jury Trial

40. Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS